UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEPHEN D. COOK, *in his capacities as* Co-Trustee of the Marshall Heritage Foundation and the Marshall Legacy Foundation | *   CIVIL ACTION NO. 17-5368<br>*   C/W 21-2139<br>*<br>*   SECTION: "L"(1)<br>* |
| VERSUS | *   JUDGE ELDON E. FALLON<br>* |
| PRESTON L. MARSHALL, *personally and in his capacity as Co-Trustee of the Peroxisome Trust* | *   MAGISTRATE JUDGE<br>*   JANIS VAN MEERVELD<br>*<br>*   *Ref. 21-2139* |
| ************************************ | * |

ORDER AND REASONS

Before the Court is defendant's Motion to Compel. (Rec. Doc. 246). Oral argument was held on June 28, 2023. Because some of the documents sought are not in the possession of the plaintiff and the remainder of the documents are irrelevant, the Motion to Compel is DENIED.

Background

This lawsuit involves an effort to remove a trustee for alleged breach of duty and to obtain damages as a result of those breaches, and for interest. Plaintiff Dr. Stephen Cook filed the Complaint in his capacity as a co-trustee for each of The Marshall Heritage Foundation ("TMHF") and Marshall Legacy Foundation ("MLF"). TMHF and MLF are Louisiana charitable foundations whose sole purpose is to provide funds to charity. E. Pierce Marshall, Jr. and his mother Elaine T. Marshall are Dr. Cook's co-trustees. Pierce and his brother Preston Marshall are co-trustees of the Peroxisome Trust, which is a charitable lead annuity trust ("CLAT") that must pay a fixed annuity for a period of years (in this case 20) to a charity. If it does so, it will not owe any taxes because its income will be entirely offset by the annual donation. Further, under the Internal Revenue Code, when a CLAT terminates, the remaining principal is distributed to the remainder beneficiaries. The Peroxisome Trust was settled by Elaine with the transfer of 1,000 membership units in

1

Peroxisome LLC to its co-trustees in 2011. These units were valued at $100,000,000 at the time and are worth more today. The membership units in Peroxisome LLC are the Trust's only assets. The Trust was designed so that all income from the membership units would be distributed to the designated charity. The designated charity was the Marshall Heritage Foundation, which was divided into TMHF and MLF in December 2013.[1] In addition to being co-trustees of the Peroxisome Trust, Preston and Pierce are its remainder beneficiaries.

Pursuant to the Peroxisome Trust Instrument, the Peroxisome Trust is required to pay TMHF and MLF an annuity of about $3.3 million, in equal installments at the end of each quarter. If the Trust fails to do so, it is deprived of the deduction for charitable donations necessary to offset its income; thiswill result in the Trust incurring income tax for the year.

Although Preston and Pierce jointly approved distributions to TMHF and MLF from April 11, 2014, to June 30, 2016, after that time, Preston refused payment.[2] Pierce could not act unilaterally to authorize the payments.

In May 2017, Dr. Cook filed an earlier lawsuit on behalf of TMHF seeking to compel Preston to authorize distributions from Peroxisome Trust to TMHF. Judge Fallon granted summary judgment in favor of Dr. Cook and against Preston in February 2019, finding that none of Preston's purported justifications for refusing to authorize distributions had merit. Judge Fallon found Preston's refusal to sign the documents required to effect the distributions to TMHF was a breach of his duties. The judgment required Preston to effect required future distributions to TMHF.

---

[1] According to Preston, Elaine did so to give Pierce control of TMHF and Preston control of MLF. Preston also submits that at the time Elaine went to court to split the Marshall Heritage Foundation, she also asked the court to permit division of the Peroxisome Trust to give each Pierce and Preston control of individual trusts. But Preston says that Pierce refused to execute papers necessary to divide the Peroxisome Trust.

[2] According to Preston, he did so because he became concerned that TMHF was not specifically named as an annuitant or beneficiary in the trust instrument. As discussed further below, though, his reasons for refusing payments were rejected by the court.

Preston appealed, and Judge Fallon stayed the judgment pending the appeal.[3] The Court's judgment was affirmed by the Fifth Circuit on December 31, 2020. Yet Preston did not begin issuing distributions.

On February 3, 2021, Dr. Cook filed a Motion to Enforce Judgment by Removing Preston L. Marshall as Co-Trustee of the Peroxisome Trust. The problem was that due to the past failure to make required distributions, the Trust had incurred huge tax liabilities and was required to resolve those before any payments could be made to TMHF and MLF. In ruling on the Motion to Enforce in April 2021, Judge Fallon found Preston in contempt of court for intentionally refusing to comply with the Court's judgment and ordered Preston to authorize Pierce to contact and negotiate with the IRS to resolve the Peroxisome Trust tax liability and make the appropriate payments to TMJF and MLF. Preston did so. And Pierce negotiated a resolution of the tax liabilities by paying about $8,000,000 (although the issue of whether the IRS will waive penalties for 2018 remains open). Pierce has distributed all outstanding annuity payments to TMHF and MLF other than for a portion of the fourth quarter of 2018 and all of 2019. According to the Complaint, the remaining payments were not made "due to a lack of available funds."

In July 2021, Judge Fallon granted Dr. Cook's motion seeking additional authorization to authorize Pierce to resolve the Louisiana tax liabilities of the Trust so that additional payments to TMHF could be made. Pierce has paid the Louisiana Department of Revenue (LDR) a little over $1,000,000 for the Trust's taxes due for 2017 through 2019. The estimated interest due is about $200,000. Pierce has requested a waiver from LDR but no decision has yet been made.

In November 2021, Dr. Cook instituted the present lawsuit on behalf of both TMHF and MLF seeking removal of Preston as trustee of Peroxisome Trust for breach of his fiduciary duties.

---

[3] Preston points out that in granting his motion to stay the judgment pending appeal, Judge Fallon found the case presented "unsettled questions of Louisiana trust law." (Rec. Doc. 149, at 3).

He argues that the rulings of Judge Fallon and the Fifth Circuit in the first lawsuit finding that Preston had breached his duties and had no justifiable excuse for doing so are *res judicata*. Dr. Cook contends that Preston's breaches are the sole cause for the Peroxisome Trust incurring millions of dollars of tax liability that should not have been incurred. He adds that Preston failed to authorize the filing of tax returns and extensions, which resulted in additional penalties. He argues that these actions have harmed TMHF and MLF by depriving Peroxisome Trust of the funds it needed to satisfy its mandatory obligations to them. He alleges that TMHF and MLF were each damaged in the amount of $3,354,453.75 because the tax payments deprived the Trust of the funds dedicated to the payment of the required annuity to them. They each seek an award of this amount as well as interest arising out of the failure to pay the required annuity in an amount of $2,148,439.05 each pursuant to Louisiana Civil Code article 2000. The outstanding annuity payments and the alleged interest are the only damages TMHF and MLF seek.[4]

Preston takes the position that the IRS can extend the period for the Peroxisome Trust to make distributions. Yet, he complains, rather than pursue that relief here, Dr. Cook, Elaine, and Pierce are pursuing this litigation even though they know that TMHF and MLF will eventually make the payments and TMHF and MLF will, therefore, not suffer any damages. Further, Preston insists that the fair market value of the Peroxisome Trust exceeds the outstanding annuities owed to TMHF and MLF so there is no deficit in funds available to pay them. He submits that the Peroxisome Trust tax returns shows that the Trust's assets (the Peroxisome LLC membership units) are worth over $220,000,000. He insists that membership units could be sold to cover outstanding payments to TMHF and MLF.

---

[4] Although the complaint alleges that the failure of Peroxisome Trust to distribute the required funds caused TMHF to be severely delinquent in its charitable donations, Dr. Cook's counsel clarified at oral argument that this allegation served as a background fact. Counsel confirmed that Dr. Cook is not seeking such damages in this lawsuit.

4

A bench trial in this matter is scheduled to begin on January 22, 2024. The deadline to complete discovery is December 11, 2023. Presently pending before the District Court are two motions for partial summary judgment filed by Dr. Cook. In one, he seeks removal of Preston as co-trustee of the Peroxisome Trust. In the other, he seeks a ruling that Preston is personally liable for damages and interest in the amount of $10,718,153.40 as of April 1. 2023 (to be split by the two foundations) for breach of his fiduciary duties. On June 6, 2023, the District Judge continued the submission date on these motions to August 30, 2023.

Presently before this Court is Preston's Motion to Compel. He submits that his discovery requests seek information intended to disprove the damages claims and to respond to the allegations that he should be removed as co-trustee. Specifically, he seeks documents related to the assets of the Peroxisome Trust[5] to demonstrate that it had sufficient assets to pay the amounts owed to MLF and TMHF (either via income or principal because the trust instrument provides that if income is not sufficient, payments be made from principal). He argues this information is relevant to showing that Peroxisome Trust's failure to make the remaining payments to MLF and TMHF is a result of Pierce's choice not to do so. Preston also seeks documents related to the financial condition of MLF and TMHF to dispute their contention that the delay in payments from Peroxisome Trust has resulted in MLF and TMHF being severely delinquent in their charitable donations.

Dr. Cook contends the requested documents are irrelevant. He submits he has provided enough information about the financial condition of the Peroxisome Trust. He argues further that the financial documents of MLF and TMHF are irrelevant and that the documents he has produced supporting the foundations' inability to meet its charitable obligations are sufficient. At oral

---

[5] According to Preston, he does not have access to any Peroxisome Trust documents.

5

argument, counsel for Dr. Cook made clear that he only seeks to recover the outstanding annuity payment plus interest owed under Civil Code article 2000. This code article provides that:

> When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. ***The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more***.

La. Civ. Code art. 2000 (emphasis added).

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee's note to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all

the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

   2. Discovery at Issue Here

      a. Documents related to assets of Peroxisome Trust

Request for Production No. 8 seeks all documents regarding the assets of Peroxisome Trust and all assets relating to the valuation of the assets of the Trust at the time of its settling and from 2016 to present. Preston complains that Dr. Cook has selectively produced tax returns, general ledgers, and balance sheets. He points out that in tax returns for Peroxisome Trust filed by Pierce, Pierce represented that the fair market value of the 1,000 units of Peroxisome LLC (which the Trust retains) is $226,530,000 (the original value plus accrued interest). Preston seeks information that substantiates the representation of asset value made to the IRS. At oral argument, Preston's counsel explained that this might be an appraisal or statements from the LLC or whatever documents provided to the Trust's accountant to arrive at the value.

Dr. Cook responds that he has produced Peroxisome Trust's federal and state tax returns, proforma returns, correspondence with the IRS and LDR, filings from the Tax Appeal, authorized and requested distributions from the Peroxisome Trust to TMHF and MLF, bank statements, balance sheets from 2011 to 2021, cash ledgers from 2011 to 2021, and cash flow statements. He insists Preston has sufficient information related to the Trust. In response to Preston's claim that the units of Peroxisome LLC should have been used to pay TMHF and MLF, Dr. Cook argues that there may not be a market for sale of the units (even if Pierce could act unilaterally to effect a sale, which he cannot). Plus, he points out that selling the shares would reduce the amount of income available to the Trust in the future and would prevent it from meeting its future obligations to

TMHF and MLF. He also argues that Pierce did not "choose" not to pay TMHF and MLF when there was insufficient income to do so because all tax liabilities had to be resolved first.

In reply, Preston argues that the Peroxisome Trust tax returns demonstrate that the Trust's assets are valued at over $220,000,000. He insists that less than 5% of the assets could be sold to pay the outstanding annuity payments and that the Trust would still have income and dividends sufficient to pay future annuity payments.

At oral argument, the parties discussed an additional issue. Any documents related to the valuation of the Peroxisome LLC membership units owned by Peroxisome Trust would be in the possession of Pierce and/or Peroxisome Trust—not Dr. Cook. Dr. Cook's counsel was unable to speak to the valuation documentation that might exist.

The issue of whether the Peroxisome Trust under Pierce's control should have sold its assets to cover the payments to MLF and TMHF is a legal argument that is not now before the Court. Is there a market for the shares? Could Pierce have effected the sale unilaterally? Would a sale of principal assets amount to a breach of fiduciary duty? Importantly, the question of whether there were, as a matter of fact, sufficient principal assets to cover the payments appears to be undisputable. Peroxisome Trust itself represented principal assets to be worth over $220 million; annuity payments of $6.6 million for the entire 20 year obligation are equal to $132 million. Dr. Cook argues that the assets could not have been sold at all, could not have been sold unilaterally by Pierce and/or would improperly rob the remainder beneficiaries to pay the charitable beneficiaries. However, in his Motion, Dr. Cook also argues that the Trust would be unable to meet its future required annuity payments if it sold its principal asset. (Rec. Doc. 248, at 18). This puts the valuation at issue. Should Dr. Cook wish to continue to urge the argument that the Trust would have been unable to make future payments if it sold part of its principal assets, then the

financial information sought by Preston could be relevant (if Dr. Cook is unsuccessful in his claims that the assets could not have been sold at all, could not have been sold unilaterally by Pierce, and/or would improperly rob the remainder beneficiaries to pay the charitable beneficiaries). However, the documents are not in Dr. Cook's possession, and he was unable to articulate what might exist, nor the burden associated with producing alternative/more detailed documents than those already produced. As such, additional analysis would be required by the Court before it could order production. At oral argument, it was revealed that a subpoena for the same information sought here was sent to Peroxisome Trust which has objected to producing them. Apparently Peroxisome Trust also intends to file a Motion to Quash in the near future.

In order to determine whether such a Motion is necessary following this ruling, Dr. Cook should advise Preston, in writing, no later than Friday, July 7, whether he intends to argue that the Trust would have been unable to make future payments if it sold part of its principal assets. If he intends to proceed, then Peroxisome Trust should file its Motion to Quash. If he does not intend to so argue, then no Motion to Quash is necessary because all valuation information sought by Preston is irrelevant. As to the Motion to Compel the Peroxisome Trust documents, though, Preston's request is denied because the documents are not in Dr. Cook's possession.

### b. Documents related to financial condition and obligations of TMHF and MLF

Preston seeks bank account statements, tax returns, general ledgers, cash flow statements, and balance sheets for TMHF and MLF all from 2013 to present. He also seeks demand notes to Elaine and any other documents reflecting claims of debt on tax returns in favor of Elaine. Dr. Cook did not produce any of the requested documents, except he did provide some information about the public availability of some tax information (Forms 990). The interrogatories at issue seek identification of payments made by Peroxisome Trust to TMHF and MLF and the amount of such

payments that TMHF and MLF distributed/donated to others. Dr. Cook objected but also referenced documents produced showing payments from Peroxisome Trust to the foundations.

Preston argues that the requested information will assist him in showing that TMHF and MLF had sufficient funds to make their charitable donations, did in fact make their charitable donations, and their tax-exempt status was never in jeopardy. He argues that the requested information is relevant to the allegation that MLF and TMHF were allegedly caused to be severely delinquent in their charitable donations and also relevant to his mitigation of damages argument because it will reveal whether MLF and TMHF took on extra charitable giving when they knew funds were not being distributed after June 2016.

However, Dr. Cook's Complaint does not seek damages resulting from delays in MLF and TMHF's payments to charitable institutions. At oral argument, counsel for Dr. Cook repeatedly affirmed this interpretation of the Complaint, insisting that the only damages being sought on behalf of MLF and TMHF is the interest due under Civil Code article 2000 resulting from the delay in payments owed by Peroxisome Trust, allegedly caused by Preston's breach of fiduciary duty.

Preston argued that the financial records of MLF and TMHF remain relevant because they will show that MLF and TMHF do not hold on to the funds they receive and would therefore never have earned interest on the funds owed by the Peroxisome Trust had they been timely paid. But this theory is contrary to the text of the Civil Code article, which explicitly states that the obligee may recover only contractual or judicial interest for delayed payments, that the obligee does not have to prove any loss, and that the obligee cannot recover more than this amount even if the obligee suffered greater damages. La. Civ. Code art. 2000 ("The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover

10

no more."). Whether MLF and TMHF actually suffered a loss in an amount more or less than the rate of judicial interest is irrelevant to the calculation of damages under article 2000.

The Court finds that the requested financial records of MLF and TMHF are completely irrelevant to the claims and defenses in this case. Accordingly, the information is not within the scope of discovery and as to these requests, the Motion to Compel is denied..

## Conclusion

With regard to documents showing the valuation of the Peroxisome Trust principal assets, the Motion to Compel is DENIED because Dr. Cook does not have possession of the requested documents. Dr. Cook shall advise Preston regarding his intentions no later than July 7, as discussed herein, and the Court shall address relevance and proportionality thereafter, if necessary. Information about the financial condition of MLF and TMHF is irrelevant to the claims and defenses in this case and as to these requests, the Motion to Compel is DENIED.

New Orleans, Louisiana, this 30th day of June, 2023.

Janis van Meerveld
United States Magistrate Judge

11